Dorothy Alther (SBN 140906)
California Indian Legal Services
609 S. Escondido Blvd.
Escondido, CA  92025
760-746-8941
Fax 760-746-1815
dalther@calindian.org

Jasmine Andreas (SBN 264437)
California Indian Legal Services
873 N. Main St., Suite 120
Bishop, CA  93514
760-873-3581
Fax 760-873-7461
jandreas@calindian.org

Attorneys for Plaintiff
BISHOP PAIUTE TRIBE

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BISHOP PAIUTE TRIBE<br><br>    Plaintiff,<br>   vs.<br>INYO COUNTY; WILLIAM LUTZE, Inyo<br>County Sheriff; THOMAS HARDY, Inyo<br>County District Attorney.<br><br>    Defendants. | Case No.:<br><br>COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF |

**INTRODUCTION**

  1.  This action is for declaratory and injunctive relief by the Bishop Paiute Tribe ("Tribe"), a federally recognized Indian Tribe, against Inyo County, the Inyo County's Sheriff and District Attorney, for the arrest and prosecution of a Bishop tribal law enforcement officer for performing his duties on the Tribe's Reservation.  The Tribe seeks an order declaring that

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Defendants are interfering with the Tribe's inherent sovereign authority to take action, defined by federal law, against non-Indians perpetrators on tribal lands.  Federal law establishes that tribes have inherent authority over non-Indians on tribal lands to stop, restrain, detain, investigate violations of tribal, state and federal laws, and deliver or transport the non-Indian to the proper authorities. *Duro v. Reina*, 495 U.S. 676 (1990), *Ortiz-Barraza v. United States,* 512 F. 2d 1176 (9th Cir. 1975). Defendants have arrested, and criminally charged, Daniel Johnson, a duly authorized Bishop tribal law enforcement officer, while he was executing federal prescribed police duties  against a non-Indian, *on the Tribe's Federal Reservation*.

2.  Officer Johnson was arrested on January 6, 2015, and is being charged with: (1) False Imprisonment; (3) Impersonating a Public Officer; (3) Assault with a Stun-Gun; and (4) Battery (misdemeanor.)  (Exhibits 1 and 2)  Defendants' actions stem from a December 24, 2014 incident that occurred on the Reservation, while Officer Johnson restrained and detained a non-Indian offender for violations of a Tribal and State Domestic Violence Protection Order, and subsequently delivering the suspect to an Inyo County sheriff's officer. At all times, Officer Johnson was effectuating his official duties.

3.  Following the arrest and charging of Officer Johnson, on January 6, 2015 Defendant Sheriff Lutze sent the Tribe a "Cease and Desist Order" threatening future arrest and criminal prosecutions against the Tribe's police officers individually or collectively for discharging their official duties. (Exhibit 3)

4.  Defendants' threat of arrest and prosecution of the Tribe's police officers directly interferes with the Tribe's ability, and obligation, to maintain peace and security on its Reservation. The arrest and prosecution of Officer Johnson, has been well publicized and is causing confusion and misunderstanding among non-Indians visiting and/or living on the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Reservation, leaving some to believe that they are free to act lawlessly, and without consequence, because the Tribe is without authority to take actions against them.

5.   Defendants are violating established federal case law that holds that while tribes may not "try and punish" non-Indians, they have inherent authority to restrain non-Indians determined to be undesirable, detain them and turn them over to the proper authorities or to exclude the non-Indian from tribal lands. Without this Court's intervention and granting of the Tribe's relief, the Tribe's ability to ensure public safety on its Reservation is and will continue to be threatened, and exposes the public and the Tribe's law enforcement officers to unnecessary risk.

## JURISDICTION

6.   This Court's jurisdiction is based upon the following:

(a)  28 U.S.C. §1331, in that the Tribe's claims arise under the Constitution and the laws of the United States;

(b)  28 U.S.C §1362 in that the Tribe is a federally recognized Tribe which asserts that defendants' actions violate the Constitution and the laws of the United States;

(c)  28. U.S.C. §2201 and §2202, in that the Tribe seeks a declaration that it has the right and authority to restrain, detain, investigate violations of tribal, state, and federal laws by non-Indians on its Reservation, and to turn over or transport such non-Indians to the proper authorities, and injunctive relief preventing Defendants from future interference with the Tribe's police authority over non-Indians on its Reservation.

## VENUE

7.   Venue is proper in the Eastern District Court of California pursuant to 28 U.S.C. §1391(e) in that the Defendants and the Tribe reside in this District.

## PARTIES

8.   Plaintiff, the Bishop Paiute Tribe, is a federally recognized Indian Tribe.  The Tribe's Reservation is located in the Eastern Sierra and the County of Inyo. Its Reservation consists of 875acres of land located adjacent to the town of Bishop, California. The Tribe exercises powers

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

of self-government through its governing body, the Tribal Council, which consists of five (5) officers duly elected from the general tribal membership.

9.   Defendant Inyo County is a political subdivision of the State of California and oversees public administration and the enforcement of state laws for a geographical area located on the eastern side of the Sierra Nevada Mountains of California.  Inyo County sets the salary for the County Sheriff and District Attorney and has supervisory authority over their conduct and use of public funds.

10.   Defendant, William ("Bill") Lutze is the duly elected Sheriff of Inyo County and a County Officer. Defendant Lutze is responsible for providing law enforcement within the County and oversees the Sheriff's Department and its officers. Defendant Lutze authorized the arrest warrant for Officer Johnson and authored, and transmitted, the "Cease and Desist Order" sent to the Tribe on January 5, 2015.

11.   Defendant, Thomas Hardy, is the duly elected District Attorney of Inyo County and a County Officer.  Defendant is responsible for all criminal prosecution within the County and oversees the District Attorney's Office and Assistant District Attorneys. Defendant filed the felony complaint against Officer Johnson and is currently the District Attorney prosecuting the case.

## **SUMMARY OF FACTS**

12.   The Tribe's Reservation consists of 875 acres and supports a population of 1796.  In addition to home of Tribal Administration, the Reservation is home to the area's Indian health clinic, a tribal pre-school, the Tribal-TANF office, a tribal elder's facility, community center, and other tribal resource centers. Tribal enterprises on the Reservation includes a small to moderate sized gaming facility, min-mart gas station, and tribal lands leased to federal, state and tribal agencies.  Through these forms of enterprises the Tribe has numerous non-Indians coming on to the Reservation for services and entertainment.  The Tribe's gaming facility alone had 450,814 patrons visit the Reservation.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

13.  The Tribe established a Tribal Police Department in 2009 with financial assistance through a federal Department of Justice Community Oriented Policing Services (COPS) grant. The Mission of the Police Department is:

> TO ENSURE THE SAFETY OF OUR TRIBAL MEMBERS, THEIR FAMILIES, THEIR GUESTS AND OUR COMMUNITY NEIGHBORS. WE WILL STRIVE TO PREVENT CRIME, PRESERVE THE PEACE, AND PROTECT OUR LANDS AND HERITAGE.  WITHOUT FAVOR OF PREJUDICE WORK COOPERATIVELY WITH OTHER PUBLIC SAFETY AGENCIES TO PROVIDE A SAFE COMMUNITY AND STRIVE TO ENHANCE OUR QUALITY OF LIFE. WE WILL, THROUGH FAIR AND IMPARTIAL LAW ENFORCEMENT, ENSURE THE RIGHTS OF ALL PEOPLE AS PROVIDED BY THE CONSTITUTION OF THE UNITED STATES OF AMERICA AND THE INDIAN CIVIL RIGHTS ACT. (Exhibit 4)

14.  The Tribal Police Department began small but has evolved over time since the establishment of the Bishop Paiute Tribal Court and adoption of tribal laws to address public safety needs of the community. In December 2012, the Tribal Police Department acquired a professional, Law Enforcement Report Writing Software Program that allowed them to start collecting, more accurate, data.  This data is used to show that the Tribal Police Department is an active force on the Reservation.  In 2012, Tribal Police had approximately 500 responses.  The combined responses for 2013 and 2014 was 469 with 340 resulting in reports. (Exhibit 5)   Many of these responses were in conjunction with the Inyo County Sheriff's Department and Probation Department, as well as, off-Reservation responses to emergencies, such as in traffic control for fires in the town of Bishop and brush fire near the town of Big Pine.

15.  Enforcement of tribal law is within the sole jurisdiction of the Tribe's Police Department.  The Tribe's laws are all civil and it does not currently exercise criminal jurisdiction. Among others, the Tribe has enacted a: Nuisance Ordinance NO. 2000-03; Trespass Ordinance NO. 2000-2; and Tribal Public Safety Ordinance NO. 2009-01. (Exhibit 6, 7, and 8).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The Tribal Public Safety Ordinance, Section 201, authorizes the Tribal Court to issue, and thereafter enforce, "protective orders for the purposes of preventing violent or threatening acts, harassment, or sexual violence involving Tribal community members."   In addition, Section 202 provides that the Tribal Court may give full faith and credit to valid protective orders issued by a state or tribal court and enforce such orders "as if it were order of the of tribe." Such full faith and credit of state protective orders and the enforcement of such orders is also authorized under federal law at 18 U.S.C. §§2265 and 2266.

16.   The Tribe employs three Officers and a Chief of Police, who is a tribal member. Tribal officer qualifications require at least two years of law enforcement experience and a certification of completion from a Police Officer Standards & Training[1] (POST) state or federal training institution or agency. (Exhibit 9).  In addition Officers are required to have knowledge of 18 U.S.C § 1662 and 28 U.S.C. § 1360 (common known as "Public Law 280") and basic federal Indian law. All applicants are subject to a pre-employment screening that includes verification of past employment, education, certifications from other agencies, criminal background check, credit checks, review of prior agency screenings and adjudication and a U.S. Department of Justice background check. A member of the Inyo County Sheriff's Department and Bishop Police Department often sit in on the interviewing panel for the hiring of new tribal police officers, and did so when Officer Johnson was interviewed for his current position.

17.  Specific to Officer Johnson, he has over 25 years of security and law enforcement experience. Officer Johnson is well-versed on Public Law 280 and federal Indian law, having worked as a tribal law enforcement officer for three tribes prior to joining the Bishop Police Department. Office Johnson graduated from the San Bernardino Valley College POST certified

---

[1]   The requirements for a certified POST training course vary from state to state.  In California a POST Regular Basic Course requires 664 hours covering 43 subject areas related to law enforcement.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

academy in 1994 while a member of the California Army National Guard. (Exhibit 10)  He also

completed 13 weeks of the 18-week Arizona POST Police Academy, which prior to attending

required he have a background clearance (verification of education, finger printed, polygraphed,

and psychological testing.)  Officer Johnson has continued training through the Advance Officer

Training programs of Orange County and San Bernardino County Sheriffs' Departments and

other training facilities and agencies.[2]  Officer Johnson holds a "Carry Concealed Weapon"

permit from Nevada and Arizona. (Exhibit 11)  He also holds a California Security Guard card

and permits for an Exposed Firearm and Baton from the Bureau of Security & Investigative

Services. (Exhibit 12)  Officer Johnson has also completed the San Bernardino County Sheriff's

Firearms Instructor course and has acted as a firearm instructor. Officer Johnson has also

received four hours of "Taser Use" training from the San Bernardino County Sheriff's

Department.  (Exhibit 13)

 18.  Bishop Tribal Police duties include patrolling the Reservation, enforcing tribal

ordinances, conducting investigations, preparing reports, testifying in Tribal and State Court

when necessary, and other general law enforcement functions.

 19.  Tribal police are also required to interact with local law enforcement when incidents

arise on the Reservation involving criminal acts by persons who need to be arrested and taken

into custody, *including non-Indians*.  The "Bishop Tribal Police Department, Policy and

Procedures," Department General Order, 3.1 Detentions, addresses detention of individuals for

investigation and releasing to outside law enforcement. Per the Order 3.1, a tribal officer has the

---

[2]  Riverside Community College Penal Code (P.C.) 832 training on: Arrest and Firearms; Powers of Arrest; and Firearms Familiarization and Safety; Rio Hondo College POST Recertification-Basic Course;  Orange County Sheriff-Coroner Department training on:  (POST) Basic Course Recertification; Laser Firearm Training; Tactical Firearms Update;  San Bernardino County Sheriff's Department POST courses on: Campus Law Enforcement; Basic Driving Training; Hostage Situations; Advanced Subject Contacts; Dealing with Informants;  Clandestine Laboratory Safety; Search Warrants; ID, Collections &Preservation of Evidence; Drug Influence Recognition; LERT; Defensive Tactic Instructors Course; PC 832 Firearms; PC 832 Power of Arrest; and Level III Modular Format Training.  (Exhibit14 multiple documents)

---

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

responsibility when arriving on scene, before outside law enforcement arrives or for the purpose of conducting an investigation for violations of Tribal Law and Ordinances, to detain the suspected violator. In addition, 3.1 provides that a tribal officer may need to detain an individual in order to: secure the scene; prevent the suspect from leaving the scene; and/or for officer or public safety. In cases of detention, the tribal police officer is to notify the Tribal Chief of Police and the Sheriff's Department.  Non-Indians suspected of violating state law should be, as soon as possible, turned over to outside law enforcement.  (Exhibit 15)

20.  Department General Order, 3.1 further addresses securing a detained person. A tribal officer may handcuff the detained person, check for spacing with a minimum of two fingers to avoid injury and secure the detained person in the custody area of the officer's police vehicle. This policy ensures officer safety, the safety of the detained person, and the public. The officer is also instructed to conduct a search of the detained person for weapons. Reasonable force may be used to detain the person if necessary to: conduct an investigation, while enforcing tribal law, to overcome resistance or the threat of resistance or prevent an unlawful attack. Finally, any person detained and that has been determined to have violated California criminal law, shall be turned over to outside law enforcement as required by policy and existing case law. (Id.)

21.  On December 24, 2014, Officer Johnson received an on-Reservation call from a tribal member reporting that his non-Indian ex-wife was violating the member's Tribal and State Protective Order by being at his home and causing a disturbance. Officer Johnson, while in route to the tribal member's home, notified the sheriff's dispatch of the tribal member's address and nature of the call. (Exhibit 16)

22.  The non-Indian in question is well known to both tribal and local law enforcement. During a 9-month-period in 2014, tribal police responded to 11 calls involving the suspect.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Seven of these calls involved joint responses with the sheriff's department and 2 of the incidents

resulted in her arrest by the sheriff for violation of a State Protective Order. (Id.)  Officer

Johnson was the tribal officer involved in 8 of the 11 calls involving the suspect and cited her 4

times for violation of any active Tribal Protective Orders.

23.   Officer Johnson, with prior experience with suspect, arrived at the scene in a marked

Tribal Police Patrol vehicle and wearing a tribal police uniform. As he approached the suspect in

her vehicle, he identified himself as "Tribal Police." After informing the suspect that she was not

allowed to be at the tribal member's home by order of both the Tribal and State courts, the

suspect became angry, verbally abusive, and insisted that she had a right to be at the home to

visit her son. Officer Johnson informed the suspect that he was going to detain her for actively

violating the state Protective Order and she would be cited for violating the tribal Protective

Order, and for Trespass and Nuisance.  (Id.)

24.   Officer Johnson repeatedly ordered the suspect out of her vehicle but she resisted

and continued to yell that she had the right to see her son. As Officer Johnson tried to remove her

from the vehicle, she began kicking at Officer Johnson making contact with his left inner thigh.

(Id.)  At this point, Officer Johnson removed his Taser and placed it in "Drive Stun" mode. In

implementing his duties, Officer Johnson warned the suspect that he would deploy his Taser if

she refused to exit the vehicle. The suspect remained defiant and Officer Johnson applied his

Taser. Having no effect on the suspect, Officer Johnson again warned the suspect that he would

use the Taser if she did not exit the vehicle. The suspect again refused and Officer Johnson again

applied his Taser in "Drive Stun" mode. This exchange occurred one additional time with the

suspect still refusing to obey Officer Johnson. (Id.)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

25.   Moments later, an Inyo County Sheriff's deputy arrived and immediately encountered several family members who had gathered outside the home and were verbally abusive toward Officer Johnson. The deputy attempted to calm the situation and have people return to the house. He was met with resistance from certain family members who were shouting and acting in a threatening manner. The deputy at this time requested assistance from the Bishop Police Department due to the fact that he and Officer Johnson were outnumbered and the hostility of the suspect and family members.  (Exhibit 17)

27. Officer Johnson finally gained control of the suspect's left arm and was able to remove her from the vehicle. The deputy assisted by taking hold of the suspect's right arm as Officer Johnson took the suspect to the ground.  While on the ground the deputy placed the suspect's right arm behind her back and Officer Johnson proceeded to handcuff her.  Family members were again yelling and became hostile toward the deputy and Officer Johnson, and the deputy feared they would attack them. The deputy pointed his department issued Oleoresin Capsicum (pepper) spray toward two interfering onlookers, who finally retreated, while Officer Johnson placed the suspect in his patrol car. (Id.)

28.  At this time, a County Sheriff's Department Acting Lieutenant and Detective, and a Bishop City Police Detective arrived at the scene. The deputy proceeded to conduct an investigation and ran an automated records check through dispatch and determined that the suspect had an active restraining order against her and was also actively on probation with terms and conditions not to contact her tribal member ex-husband.  Based upon discussions with the suspect's ex-husband, who did not want to see the suspect arrested, but only to leave his property, the sheriff officers did not arrest the suspect. The deputy informed the suspect that he

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

would be referring charges to the Inyo County Probation Department. Officer Johnson cited the suspect with Trespass, Nuisance and violating the tribal and state Protective Orders. (Id.)

29. Before leaving the scene the deputy asked the suspect if she was injured as he noticed a small abrasion on a toe of her left foot. The suspect complained of injury to her abdominal area, and revealed her stomach to the deputy, who observed a slight redness. Officer Johnson asked the suspect if she wanted an ambulance to respond, but she refused medical aid. The suspect was then released without further incident. (Id.)

30. The following week, the Sheriff's Department conducted an investigation on the December 24, 2014 incident and submitted it to the District Attorney's office. On January 5, 2015 a Felony Complaint was filed by Defendant Hardy in the Inyo County Superior Court charging Officer Johnson with three felonies and one misdemeanor.

31. On January 6, 2005, Defendant Lutze issued a "Cease and Desist Order" to the Tribe ordering all Tribal Police to cease and desist enforcement of California Statutes and possessing firearms outside of tribal property. The letter accuses tribal officers of exercising "state police powers under the color of authority of Bishop Paiute tribal law…" and emphasizes that Tribal Police have no legal authority to enforce any state or federal laws *on or off the reservation* and have only the rights of "private citizens."

32. The Tribe responded to Defendant Lutze's letter/order assuring the Defendant that its Police Officers would not exercise state police authority (which they already did not exercise) and only carrying their firearms off Reservation coming to and from work and when their patrol on Reservation requires them to cross State Hwy 168 and when traveling on U.S. Highway 395. As for exposing their firearms off reservation, the Tribe would caution its Officers to only expose their firearms within the legal limits of applicable state law.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

33.  At this time the criminal case against Officer Johnson is moving forward and he is on desk duty unable to perform his regular duties until the criminal case against him has been resolved.

## CAUSE OF ACTION

34.  The Tribe realleges each of the allegations set forth in paragraphs 1-33 above and by this reference, incorporates each such allegation herein as if set forth in full.

35.  Federal law establishes that tribes, as sovereign governments, have inherent authority to establish their own laws and to enforce those laws on tribal lands. *Williams v. Lee,* 358 U.S. 217 (1959). Tribal inherent authority includes the right to establish a tribal police department and employ tribal law enforcement officers to enforce its laws. *Ortiz-Barraza v. United States,* 512 F. 2d 1176 (1975); *Walker v. Rushing,* 898 F.2d 672 (8ᵗʰ Cir. 1990); *Cabazon Band of Mission Indians v. Smith,* 34 F. Supp.2d 1195 *(*Cal. C.D. 1998).   However, federal law has defined a tribe's civil and criminal authority over non-Indians.

36.   Ruling on a tribe's civil jurisdiction over non-Indians on fee lands within the boundaries of an Indian reservation, the Supreme Court found that there was not jurisdiction with two exceptions: (1) the non-member has entered into consensual relationships with tribe or its members by commercial dealings; or (2) the non-Indian's conduct threatens or directly affects the "political integrity, the economic security, or the health or welfare of the tribe." *Montana v. United States,* 450 U.S. 544, 565-66 (1981). The *Montana* test, as it is commonly referred to, has been expanded to include non-Indian conduct on tribal lands within the reservation. *Nevada v. Hicks*, 533 U.S. 353, 360 (2001)(finding that the tribal court did not have jurisdiction over tribal member's civil rights action over state game wardens who executed a search warrant of the

Page 12

member's residence on tribal trust land. "The ownership status of land, in other words, is only one factor to consider in determining whether regulations of activities of nonmembers is 'necessary to protect tribal self-government or control internal affairs'"

The Supreme Court has also spoke on a tribe's criminal authority over non-Indians. In *Oliphant v. Suquamish Indian Tribe,* 435 U.S. 191 (1978) the Court held a tribe has no criminal jurisdiction to "try and punish" a non-Indian. [3]

37.  Within this federal jurisdictional framework, the Supreme Court has held that no person is free to act without impunity on tribal lands and that:

> Tribal law enforcement authorities have the power to *restrain* those who disturb public order on the reservation, and if necessary, to eject them.  Where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to d*etain* the offender and transport him to the proper authorities." *Duro v. Reina*, 495 U.S. 676, 697 (1990) (Emphasis added).

38.  The Court's holding in *Duro* is consistent with lower federal court and state court holdings on the authority of tribal law enforcement to restrain and detain non-Indians, to investigate possible violations of tribal, state, or federal law, and to transport or deliver up such non-Indian violators to the proper authorities. In *Ortiz-Barraza v. United States,* 512 F. 2d 1176 (9th Cir. 1975), the court found that the Papago tribal police officer's stopping, detaining and searching on the reservation of a non-Indian, which  uncovering illegal drugs, within the tribe's authority and the search and seizure was reasonable.  Finding specifically, "The power of the Papago to exclude non-Indians state and federal violators from the reservation would be

---

[3]  The Supreme Court extended this limitation on tribal criminal jurisdiction to non-member Indians in *Duro v. Reina,* 495 U.S. 676 (1990). Congress responded to *Duro* by amending the Indian Civil Rights Act, 25 U.S.C. § 1301(2) and recognized and affirmed the "inherent power of Indian tribes exercise criminal jurisdiction" over non-members Indians. *United States v. Lara,* 541 U.S. 193, 198 (2004)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

meaningless were tribal police not empowered to investigate such violators." *Ortiz-Barraza v. United States,* 512 F. 2d at 1180.

39. The same court found that Tohono O'odham tribal rangers acted as tribal agents, and not as private citizens, when they stopped and detained, in the back of their ranger vehicle, a non-Indian on the reservation and discovered 20 illegal aliens in the non-Indian's van. *United States v. Becerra-Garcia,* 397 F. 3d. 1167, (9th Cir. 2005).The 8th Circuit has similarly held that the stopping and transporting of a non-Indian violator of state law (Driving Under the Influence (DUI)) on the reservation and detaining him over night at the tribal police station was reasonable under the circumstances and in response to the local law enforcement officer's request.

40. Also instructive is the Supreme Court of Washington case of *State of Washington v. Schmuck,* 850 P. 2d 1332 (1993). Although not controlling*, Schmuck* has been cited with approval by the Supreme Court in *Strate v. A-1 Contractors,* 520 U.S. 438 (1997). The court in *Schmuck,* relying in part on *Ortiz-Barraza v. United States*, found that a Suquamish Tribal Police Officer had the *inherent authority* to stop, restrain, and investigate a non-Indian on the reservation suspected of violating state (DUI) and tribal law and to detain the non-Indian for state authorities to charge and prosecute the non-Indian. *State of Washington v. Schmuck,* 850 P. 2d 1332 (1993) The court relied upon the practical and unrealistic outcome if the tribal officers were not empowered to take such actions against a non-Indian violating state law on the reservation.

> In this case, if the Suquamish Indian Tribe did not have the authority to detain, Schmuck would have been free to drive away with an alcohol level exceeding the limit for legal intoxication. In the 20 minutes that it took for Trooper Clark to respond, Schmuck could have easily caused extensive property damage or seriously injured other motorists. He could have also left the Reservation and eluded capture by the State Patrol." *State of Washington v. Schmuck,* 850 P. 2d at 1342

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

The court in *Schmuck* also took note of the New Mexico Court of Appeals holding in *State v. Ryder,* 649 P. 2d 756 (1982) that:

> To hold that an Indian police officer may stop offenders but upon determining they are non-Indians must let them go would be to subvert a substantial function of Indian police authorities and produce a ludicrous state of affairs which would permit non-Indians to act unlawfully, with impunity on Indian lands." *State v. Ryder,* 649 P. 2d at 759.

42.  The Defendants' arrest and charging of Tribal Officer Johnson for restraining—with assistance, and in coordination with Defendant's Lutze's own officer—a  non-Indian violator of state and tribal law on the Reservation, and detaining her for charging and prosecution by Defendants, violates federal common law.

43.  Defendants' threat of future arrests and charging of the Tribe's officers for carrying out their lawful and duly authorized power, is a direct, and immediate interference, with the Tribe's sovereign authority to provide public safety on its Reservation.


**PRAYER FOR RELIEF**

Pursuant to the forgoing, the Tribe prays the Court grant the following relief:

44.  A declaration that Defendants' actions of arresting and charging Tribal Officer Johnson and future threat of criminal prosecution of the Tribe's police officers, violates federal common law and directly interferes with the Tribe's inherent authority to maintain a police department and protect public safety on its Reservation.

45.  A declaration that the Tribe's police officers have the authority on its Reservation to stop, restrain, investigate violations of tribal, state, and federal law, detain, and transport or deliver a non-Indian violator to the proper authorities.  By carrying out these federally authorized actions, the Tribe's duly authorized law enforcement officers are not impersonating a state officer nor is their restraint, investigation and detention of a non-Indian, in compliance with

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

provisions of the Indian Civil Rights Act, an "arrest" for purposes of a state criminal charge of false imprisonment.

46.  The Defendants be enjoined from arresting and criminally charging the Tribe's duly authorized police officers, acting in compliance with the Indian Civil Rights Act, for carrying out their duties as clearly delineated under tribal and federal law, or otherwise interfering and threatening tribal officers while executing their duty.

47.  Any and all further relief as deemed appropriate by the Court.

48.  Attorney fees and costs.


DATE __March 6, 2015____          CALIFORNIA INDIAN LEGAL SERVICES



                                  By: /s/ Dorothy Alther_____
                                  Dorothy Alther


                                  /s/ Jasmine Andreas

                                  Jasmine Andreas
                                  Attorneys for the Plaintiff

_____
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF